UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-CV-10523-RGS

KEVIN McGEE

v.

TOWN OF ROCKLAND;
JOHN LLEWELLYN in his individual
capacity; BARBARA McGEE WOODS;
and SUZANNE CASTELTON RYAN

MEMORANDUM AND ORDER ON
DEFENDANTS TOWN OF ROCKLAND AND JOHN LLEWELLYN'S
MOTION FOR SUMMARY JUDGMENT and
DEFENDANT SUSAN CASTLETON RYAN'S
MOTION FOR SUMMARY JUDGMENT

December 20, 2012

STEARNS, D.J.

On March 25, 2011, plaintiff Kevin McGee filed this action against defendants John Lewellyn, the Chief of Police of the Town of Rockland, McGee's former wife, Barbara Woods, and her divorce attorney, Susan C. Ryan. The gist of the Complaint is the allegation that defendants, acting in concert, violated McGee's civil rights by orchestrating his arrest on numerous trumped up violations of a restraining order improperly obtained by Woods in connection with the divorce proceeding.[1] Llewellyn

---

[1] McGee's Complaint contains the following claims: Count I - 42 U.S.C. § 1983 v. Llewellyn for Unlawful Arrests; Count II - 42 U.S.C. § 1983 v. Llewellyn for

and the Town of Rockland (Town) move for summary judgment on all of McGee's

claims, and separately for sanctions under Fed. R. Civ. P. 11.[2]   Ryan also requests

summary judgment on McGee's cross-claims for conspiracy, civil violations of the

Racketeer Influenced and Corrupt Organizations Act (RICO), and intentional infliction

of emotional distress.  For the reasons to be stated, defendants' motions will be allowed

in their entirety.

## BACKGROUND

---

Detention and Confinement; Count III - 42 U.S.C. §1983 v. Town for Unlawful
Arrests; Count IV - 42 U.S.C. § 1983 v. Town for Detention and Confinement; Count
V - Civil Conspiracy v. Woods; Count VI - Civil Conspiracy v. Ryan; Count VII - Civil
Conspiracy v. Llewellyn; Count VIII - Civil Rico v. Individual Defendants; Count IX -
Intentional Infliction of Emotional Distress v. Llewellyn; Count X - Intentional
Infliction of Emotional Distress v. Woods; Count XI - Intentional Infliction of
Emotional Distress v. Ryan; Count XII - Mass. Civil Rights, Mass. Gen. Laws ch. 12,
§§11h and 11i v. Llewellyn; Count XIII - False Imprisonment v. Llewellyn; Count XIV
- Malicious Prosecution v. Woods.

[2] The court entered an order denying the motion for Rule 11 sanctions on
December 17, 2012.  Rule 11 prohibits filings made with an improper purpose, the
offering of frivolous arguments, "and the assertion of factual allegations without
'evidentiary support' or the 'likely' prospect of such support."  *Young v. City of
Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005).  The fault need not be
wicked or reckless, but must at least be "'culpably careless.'"  *Citibank Global
Markets, Inc. v. Rodríguez Santana*, 573 F.3d 17, 32 (1st Cir. 2009), quoting *Roger
Edwards LLC v. Fiddes & Son, Ltd.*, 437 F.3d 140, 142 (1st Cir. 2006).  Rule 11
sanctions should be reserved for only the most egregious of lawyerly missteps.  *Cf.
Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992); 5A Wright & Miller,
Federal Practice and Procedure § 1336.3 (3d ed. 2004).  While with deeper reflection
on counsel's part, this Complaint might best have not been brought at all.  But the court
cannot say that it is utterly frivolous.

McGee and Woods were married sometime before 2000. They lived at 516 Union Street in Rockland, Massachusetts. McGee operated a used car business located at 511 Union Street, catty-corner from the family domicile. The couple has a son who is now eleven-years old.

Llewellyn has been the Chief of Police in Rockland since August of 2006. He joined the force in 1988 as a part-time officer. Llewellyn is also an attorney who maintains a Rockland-based practice concentrating on probate matters.[3] According to McGee, he "had had conflicts with . . . Llewellyn based upon his unfair treatment of [McGee] and [his] business in Rockland and had made written complaints against him" prior to the events that figure in the Complaint. McGee Aff. ¶ 3. Llewellyn first met Barbara Woods in the late 1990s.

In the summer of 2006, after her marriage had begun to sour, Woods sought legal advice from Llewellyn about obtaining a divorce from McGee. She arranged to meet Llewellyn at a donut shop on Route 58 in Abington, Massachusetts, because "Woods didn't want McGee to see her car at the police station." Llewellyn Dep. at 31-32. At the meeting, Woods confided to Llewellyn that McGee "was being abusive to her."

---

[3] In December of 2005, Llewellyn was fined $2,000 by the Massachusetts State Ethics Commission for serving as the Rockland Deputy Chief of Police while simultaneously holding office as a Rockland Selectman, a violation of the conflict of interest provisions of Mass. Gen. Laws ch. 268A.

*Id.* at 32.  Llewellyn replied that he could not represent her, but referred her to Susan Ryan, a domestic relations lawyer with whom he had become acquainted with through his own practice.  Ryan brought a divorce and custody action against McGee on Woods' behalf sometime during the summer of 2007.

According to McGee, between July of 2006 and July of 2008, he was arrested seven times and formally charged four times by the Rockland Police for alleged violations of a domestic abuse restraining order.[4]  McGee claims that all of the charges were either dismissed prior to trial or resulted in a not guilty finding.

The first of the skirmishes with the Rockland Police detailed in the Complaint occurred on July 27, 2006.  Woods had placed a call to Lewellyn in which she complained that McGee had guns in the house and had threatened to kill her in the belief that she was "having an affair."  Defs.' Ex. C.  Three Rockland officers – Sergeants Rodney Welch, Brian McDonald,  and Wayne Jackson – were sent to the McGee home.  Woods told the officers that she suspected that the guns were hidden in McGee's golf bag.  The officers searched the bag and retrieved a Smith & Wesson revolver and a "starting pistol."  They tagged the guns as evidence and removed them

_____

[4] McGee also states that he was subjected to numerous traffic stops by the Rockland Police during the same period.  McGee Aff. ¶ 14.  In his deposition, Llewellyn verified that McGee had been charged on seven occasions for firearms and driving violations.

from the home.  That same day, Woods obtained a Chapter 209A restraining order (the Restraining Order) against McGee after filing an affidavit with the Hingham District Court claiming that McGee had told her that "she would be taken care of" and that "he was done with her."   McGee Aff. - Ex. 2.   Woods testified that she interpreted McGee's statements as threats to kill her.  A police complaint issued on July 31, 2006, charging McGee with "improper storage of a firearm" and "unlawful possession of ammunition."  Defs.' Ex. C.

On July 31, 2006, Woods presented at the Rockland Police station complaining that McGee had displayed a sign in his business window (visible from the home), which read: "Little man I love you."  Woods showed the desk officer a copy of the Restraining Order, which allowed McGee contact with his son only by telephone.  The officer left a message on McGee's voice answering machine telling him to remove the sign.  McGee came to the station and told the officers on duty that he would comply.

On August 15, 2006, Sergeant Welch accompanied McGee to his former home to collect some personal belongings.  After observing that McGee had only partially covered the sign in his business window (leaving "love you" fully visible and the remainder of the message clearly discernible), Welch advised McGee that if he did not completely remove the sign, he would face criminal charges.  When McGee persisted in displaying the sign, an officer was sent to photograph it and file a criminal complaint.

McGee was duly arrested, although the District Court dismissed the complaint at his initial appearance.

On August 15, 2006, Woods presented at the Rockland Police station complaining that McGee had been "harassing her all afternoon . . . [and that] on three occasions when she pulled into the driveway he would laugh and point towards her and then walk towards the sidewalk grabbing his groin." Defs.' Ex. D. Woods had made a videotape of McGee's mimicry, which she gave to Sergeant Welch. The Rockland Police made several attempts to arrest McGee at his business and at the trailer in which he was then living, "but he was not located." *Id.* A criminal complaint issued against McGee for violating the Restraining Order and for "lewd, wanton, and lascivious conduct." Defs.' Ex. E.

On October 14, 2006, Woods complained to the Rockland Police that McGee had mailed her a "no trespass order" barring her from his business premises. Woods claimed that the mailing violated the terms of the Restraining Order. When she was asked if McGee was "in town," Woods told the police that he was in Florida, but would return on Sunday. On his return, McGee was again charged with a violation of the Restraining Order.

After several postponements, on March 27, 2007, a trial on the July of 2006 gun charges was held before Judge Ronald Moynahan in the Hingham District Court.

6

While no police witnesses testified, an October 14, 2006 police report was entered in evidence. During her direct examination, Woods testified that several Rockland Police officers, as well as Chief Llewellyn, were her "personal friends." Woods acknowledged that in complaining about McGee, she had called Llewellyn directly, rather than using the public 911 number. Judge Moynahan found Woods' testimony not credible and dismissed the charges. McGee maintains that Woods (or Llewellyn) "planted" the revolver and the starting pistol in his golf bag to bolster Woods' prospects of gaining sole custody of her son.

On July 3, 2007, Attorney Ryan sent a letter in the form of a five-page facsimile to Llewellyn informing him that Woods had "testif[ied] at the trial" and that "no Rockland Police Officer was present."[5] McGee Aff. - Ex. 7. Ryan asked Llewellyn to "[p]lease be sure that a police officer is in court on July 18, 2007, and that the video [of McGee's mocking gestures] is available to the DA's office." *Id.* Although Llewellyn testified that two officers – Eramo and Welch – had viewed the videotape before applying for the complaint, it is not clear from the record whether either officer testified at the trial. In any event, the District Court dismissed the complaint at the conclusion of the hearing.

---

[5] McGee complains that Ryan, in response to a subpoena duces tecum, produced only the first page of the five-page fax. Pl.'s Opp'n at 3.

On August 1, 2007, Robert Manzella[6] complained to the Rockland Police that McGee had driven his truck onto Manzella's property (a parking lot) at 849 Market Street to take pictures of three parked cars in violation of a "no trespass order for McGee." Defs.' Ex. G. When Manzella pulled into the lot to object, McGee drove away. McGee then returned and parked at a nearby gas station. When a Rockland police officer confronted McGee , he denied having been in the Market Street lot. On August 30, 2007, a criminal complaint issued against McGee for tearing down a trespass warning posted on Manzella's property.[7]

One of McGee's arrests took place on an otherwise unspecified Sunday morning. Sergeant Welch, who is a friend of McGee, called Judge Patrick Hurley of the Hingham District Court at home to request authorization to release McGee on bail. The Rockland Police conducted an internal affairs investigation as Welch's telephone call violated Department policies regarding contact by officers with judges. A reprimand was placed in Welch's personnel file.

---

[6] Manzella is not named in the Complaint or otherwise identified.

[7] McGee was scheduled to be arraigned on September 12, 2007. The disposition of the complaint does not appear in the record, although presumably it was eventually dismissed.

Woods' divorce from McGee became final on August 7, 2007.[8]   Woods remarried shortly thereafter.   On September 27, 2007, McGee moved pro se to "amend" the Restraining Order, asserting that he had "wrongfully been accused and placed in a situation that was constructed by [his] wife Barbara . . . and the Chief of Police in Rockland."  Defs.' Mot. for Sanctions - Ex. B.  McGee alleged that his ex-wife had met with Llewellyn to seek advice on obtaining a restraining order, that she had "planted the firearms" in his golf bag, and that her "abuse of the court . . . was a violation of his civil rights."  *Id.*  He also informed the court that Woods had taken out separate restraining orders against her father, brother, and nephew, and the father of her first child.  *See id.*  McGee asked the court for the "ability to continue a natural father and son relationship."  *Id.*  In late 2007, McGee served Llewellyn with a subpoena duces tecum seeking documents relating to "the interactions between Llewellyn and Ryan" in order to show that Llewellyn was working in concert with Woods.  Llewellyn responded "that he had no such information."  McGee Aff. ¶ 17.

On June 2, 2008, a trial was held on a domestic abuse complaint that had been filed by Woods on July 27, 2006, in the Plymouth Probate Court.  Judge Robert Langlois found that the original Restraining Order had improperly issued on insufficient

---

[8] It appears that McGee was awarded "full custody" of the couple's son.  Compl. ¶ 49.

evidence.  He further held that

> [Woods] has a pattern of contacting the police about [McGee] for
> incidents or events that were proven not to be violations of the restraining
> order. . . . [Woods'] contact with the police about the above . . . actions
> allegedly undertaken by [McGee] has led to [McGee] being charged, on
> at least four (4) different occasions, with various criminal offenses.  In
> each (separate) instance, [McGee]  was tried in criminal court (at
> considerable legal expense to him for legal representation) and found not
> guilty in each instance.  (The Court further notes that [Woods] testified
> she is a personal friend of the Chief of Police in Rockland, and that she
> is also friendly with additional police officers.) . . . [Woods] appears to
> have used the restraining order as a means of harassing, humiliating and
> possibly trying to instigate the Defendant without having any personal
> consequences or direct involvement.  The Plaintiff [Woods] testified that
> she would contact the police and the police would make any choices
> thereafter.  [Woods] takes no responsibility for her own involvement in
> the process that led to several unwarranted charges being brought against
> [McGee].

*See* Compl. - Ex. A (Findings and Rulings dated June 2, 2008).  The day after Judge

Langlois issued his decision, Llewellyn wrote a letter to McGee describing the meeting

he had with Woods "to discuss her marital situation" in the summer of 2006.  McGee

Aff. - Ex. 3.  On July 3, 2008, Ryan withdrew her appearance in the Probate Court,

citing "an active adversarial situation . . . adversely affect[ing] her ability to effectively

represent [Woods]."  Ryan SOF - Ex. 3.

The Rockland Police arrested McGee again on October 24, 2008, and also on

November 25, 2008, as the result of witness intimidation charges filed by the Abington

Police Department.  Warrants for McGee's arrest had been issued separately by the

Brockton District Court and the Stoughton District Court.  The intimidation charges arose out of confrontations that McGee had with Roger Woods, a former selectman in Abington who was then the husband of Barbara Woods.[9]  Eventually, the court ruled that neither complaint was supported by probable cause.

On September 15, 2009, McGee filed a public records request with the Town of Rockland asking for "copies of all emails sent by Mrs. Mary Stewart, Executive Assistant to the Town Administrator and Rockland Board of Selectman, from January 2007, to the date of the request" to Chief Llewellyn and the Department's domestic abuse officer.  McGee Aff. - Ex. 4.  Although an official in Secretary of State Galvin's Office notified the Rockland Town Administrator that the Town's response to McGee was "inadequate" and that he had "failed to provide sufficient justification for withholding the [requested] records," *id.*, nothing was forthcoming from the Town.

According to McGee, it was only after he read Judge Langlois' decision and Llewellyn's June 3, 2008 letter, that he "learned that Ms. Woods was in contact with the Chief of Police concerning her divorce from the very beginning."  Compl. ¶ 46; Ex. B.  McGee filed this case on March 25, 2011.

## DISCUSSION

---

[9] As of May of 2012, Barbara and Roger Woods were no longer married.  *See* Llewellyn Dep. at 80.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). In opposing a motion for summary judgment, a plaintiff "cannot rely exclusively on bald assertions, unsupported conclusions, or optimistic surmises. . . . Where, as here, the nonmovant-plaintiff has the burden of proof, the evidence adduced on each of the elements of his asserted cause of action must be significantly probative in order to forestall summary judgment." *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 30 (1st Cir. 2007) (internal citations omitted). "[C]onjecture cannot take the place of proof in the summary judgment calculus." *Id.* at 31.

### Statute of Limitations

The parties agree that a three-year statute of limitations applies to McGee's section 1983 civil rights claim as well as to his state-law tort claims. *See* Mass. Gen. Laws ch. 260, § 2A. The dispute rather centers on the issue of when during the course of his convoluted dealings with his ex-wife, Llewellyn, and Ryan, McGee should have become aware of the fact that he had potentially suffered a legal wrong.

This question is decided as a matter of federal and not state law. "Whereas the

personal injury statute of limitations of the forum state governs in § 1983 actions, *see, e.g., Owens v. Okure*, 488 U.S. 235, 236 (1989), the date of accrual, *i.e.*, the date on which the limitations clock begins to tick, is determined by reference to federal law." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992).   McGee maintains that "the three year statute did not start to run until [he] was fully apprised of the actions being taken against him." Pl.'s Opp'n at 2.  This contention misstates the controlling law.  "'Section 1983 claims generally accrue when the plaintiff knows, *or has reason to know* of the injury on which the action is based, and a plaintiff is deemed to know *or have reason to know* at the time of the act itself and not at the point that the harmful consequences are felt.'" *Gorelik v. Costin*, 605 F.3d 118, 122 (1st Cir. 2010) (emphasis added), quoting *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008).   It is apparent from the record that McGee had come to the belief that the defendants had conspired to violate his civil rights sometime prior to September 27, 2007, when he composed the pleading that he filed in the Hingham District Court, alleging that his wife had "improperly obtained the Restraining Order by seeking advice from Llewellyn . . . and, in concert they had 'constructed' the firearms charge 'in violation of [his] civil rights . . . .'" Defs.' Mot. for Sanctions - Ex. B.  Because this action was filed three and one-half years later, on March 25, 2011, the section 1983 and the state-law tort claims are barred by the statute of limitations.

13

The allegation of conspiracy does not rescue McGee's case from the limitations statute. In a civil rights conspiracy context, the statute of limitations runs from the date on which the violation that causes damage to the plaintiff occurs, and not from the date of the conspiracy's last overt act. *See Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). The operative date in this case is July 27, 2006, the day the conspirators allegedly planted firearms in McGee's golf bag, and on which Wood obtained the Restraining Order that became the basis of the subsequent arrests of McGee.[10]

While McGee contends in his Opposition that his two arrests in October and November of 2008 were part of the conspiratorial agreement, there is no evidence that links these arrests to defendants or to the custody dispute (which had been resolved in

---

[10] McGee attempts to circumvent the *Nieves* rule by invoking the "continuing violation doctrine," a concept taken from Title VII hostile environment cases. The Supreme Court has recognized that in these cases "the entire hostile work environment encompasses a single unlawful employment practice . . . ." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). As a result, the discriminatory effects of the practice on a plaintiff are cumulative and not always easily identifiable as opposed to discrete acts of employment discrimination "such as termination, failure to promote, denial of transfer, or refusal to hire . . . ." *Id*. at 114. "[T]he 'unlawful employment practice' [in these cases] therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Such claims are based on the cumulative effect of individual acts." *Id*. at 115. As Judge Posner has aptly observed, "the 'continuing violation' doctrine is misnamed . . . . The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lamont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). The doctrine does not apply here where the harm flowing to McGee from the conspiracy manifested on July 27, 2006.

McGee's favor prior to the arrests).   As McGee admits, the 2008 arrests were instigated by his ex-wife's new husband (Roger Woods), and were conducted at the behest of the Abington Police Department.  Pl.'s Opp'n at 4.  The most that McGee can offer is the suggestion that Llewellyn might have been involved because he "admitted at his deposition that he was in communication with the Abington Chief of Police, and that he personally called the Abington Chief of Police to tell them that they had arrested the plaintiff."  *Id.*  However, Llewellyn's deposition transcript indicates that Llewellyn simply responded to a call from Chief Majenski in Abington seeking confirmation that the Rockland Police had in fact arrested McGee on the Abington warrants.  *See* Llewellyn Dep. at 79-80.  McGee has not alleged that Roger Woods and/or Chief Majenski were part of the "scheme to harass" him, nor are they named as defendants.[11]

## *Civil RICO*

In Count VII of the Complaint, McGee alleges that Llewellyn, Woods, and Ryan violated the civil RICO statute, 18 U.S.C. § 1861.  *See* Compl. ¶¶ 86-92.  The civil RICO statute is subject to a four-year statute of limitations running from the last of the required predicate acts.  *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) (holding that

---

[11] McGee states that he "was subjected to numerous traffic stops by the RPD for no legal reason."  McGee Aff. ¶ 14.  As McGee offers no further information regarding these stops – place, date, time, circumstances – the court is unable to consider them in its analysis of the timeliness or substance of his claims.

"[s]ince a pattern of predicate acts can continue indefinitely," the discovery rule does not apply in a RICO context as "the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete."). The March 25, 2011 Complaint therefore requires that the last alleged predicate act have occurred after March 25, 2007. As will be explained, McGee fails to specify the alleged predicate acts underlying his civil RICO claim. As a consequence, the court is unable to determine whether any predicate act falls within the four-year limitations period.

"A civil RICO claim, 18 U.S.C. § 1962(c), requires proof of several elements including the existence of a racketeering 'enterprise' and its conduct through a 'pattern' of racketeering activity, which requires at least two [related] acts of racketeering . . . ." *Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 610 F.3d 8, 11 (1st Cir. 2010), quoting 18 U.S.C. §§ 1961(4)-(5). Crimes constituting predicate acts are set out in the statute. *See* 18 U.S.C. §§ 1961(1), 1962(c). An enterprise may be a legal entity or a group of persons associated in fact. *United States v. Turkette*, 452 U.S. 576, 580-581 (1981); s*ee also Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir. 1995) (anti-abortion groups found to be an "association in fact"). However, "[t]he 'person' alleged to be engaged in racketeering activity (the defendant, that is) must be an entity distinct from the 'enterprise.'" *Odishelidze v. Aetna Life & Cas. Co.*, 853

F.2d 21, 23 (1st Cir. 1988) (per curiam), quoting 18 U.S.C. § 1962(c); *see also Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190-191 (1st Cir. 1996) (complaint failed to allege a distinct enterprise).

McGee's RICO claim fails in the first instance for failing to satisfy the enterprise element of RICO.  The Complaint alleges that "the individual defendants formed an association-in-fact for the purpose of abusing, harassing and defrauding Mr. McGee . . . [and that t]his association-in-fact was an 'enterprise' within the meaning of RICO, 18 U.S.C. § 1961(4)."  Compl. ¶ 88.[12]  This will not do – an enterprise for RICO purposes must be an "entity separate from the named defendants who are allegedly engaging in unlawful activity."  *Libertad*, 53 F.3d at 442.  "We have consistently held that the same entity cannot do 'double duty' as both the RICO defendant and the RICO enterprise."  *Id.*

The claim also fails to meet the predicate act requirement of RICO.  With regard to predicate acts, McGee alleges that the acts are "set forth above."  *Id.* ¶ 89.  In the "above," McGee simply recites the statute –

---

[12] This definition of the alleged enterprise is repeated in McGee's opposition to the motion for summary judgment.  In his brief, he alleges that the enterprise "is the conspiracy between and among Ryan, Barbara, and Llewellyn." Pl.'s  Opp'n at 7.  He contends that "the parties engaged in a continual scheme to harass [him] during the divorce proceedings. . . .  Barbara made clearly bogus complaints, and the defendants continually acted upon them, despite their obvious lack of probable cause."  *Id.*

The acts set forth above constitute a violation of one or more of the following statutes: mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; tampering with a witness, victim, or informant, 18 U.S.C. § 1512; retaliating against a witness, victim, or informant, 18 U.S.C. § 1513; interference with commerce, robbery, or extortion, 18 U.S.C. § 1951; racketeering, 18 U.S.C. § 1952.   The Individual Defendants each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

*Id.* ¶ 90.  McGee, however, does not identify or describe a crime allegedly committed by defendants that would remotely qualify under the statute as a predicate act.

ORDER

For the foregoing reasons, defendants Town of Rockland, John Llewellyn, and Susan Ryan's motions for summary judgment are <u>ALLOWED</u>.   The court will also enter summary judgment for Barbara Woods on the federal civil rights and RICO claims.[13]  The remaining state-law claims against Barbara Woods will be <u>DISMISSED</u> without prejudice.   The Clerk will enter judgment for the moving defendants on all claims and for defendant Barbara Woods on the federal claims.   The Clerk will further

---

[13]  Although Barbara Woods has not moved for summary judgment on the federal claims, a district court may grant summary judgment *sua sponte* so long as the discovery phase is sufficiently advanced that the court can make an accurate determination of whether a genuine issue of material fact exists and so long as the losing party is given the opportunity to bring forward his  best evidence.  *See Stella v. Town of Tewksbury*, 4 F.3d 53, 55 (1st Cir. 1993).  As extended, fact discovery closed in this case on May 25, 2012.  Nothing of a factual nature asserted by McGee would cause a different outcome with regard to Barbara Woods than with the three moving defendants – at least on the federal claims.

enter a dismissal without prejudice of the state-law claims against Barbara Woods.  The

Clerk will then close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE